UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

BENJAMIN TORRES and CARMEN Y. VASQUEZ,

                    Plaintiffs,

-v-                                      CIVIL ACTION NO.: 19 Civ. 6973 (SLC)

                                                     **OPINION AND ORDER**

BALDE THIERNO MAMADOU, SARGEANT LOGISTICS, INC., VLAD TRANSPORTATION, INC., NEW ENGLAND EXPRESS INC. AND JOHN DOES 1-10 (said names being fictitious and unknown) and/or ABC CORPS. 1-10 (said names being fictitious and unknown),

                    Defendants.

**SARAH L. CAVE**, United States Magistrate Judge.

## I. INTRODUCTION

Plaintiffs Benjamin Torres and his wife, Carmen Y. Vasquez ("Plaintiffs"), filed this action, alleging that Defendants' negligence caused a motor vehicle accident that resulted in personal injury. (ECF No. 17). The Complaint asserts, on behalf of Torres, negligence claims against Defendants Balde Thierno Mamadou, who was the driver of the vehicle that rear-ended Torres's vehicle, as well as Sargent Logistics, Inc. ("Sargent"), Vlad Transportation Services, Inc. ("Vlad"), and New England Express, Inc. ("NE Express"), and a loss of consortium claim on behalf of Vasquez. (Id.)

Torres now moves for summary judgment as to Mamadou and Sargent's liability on his claims.[1] (ECF No. 59 (the "Motion"). For the reasons set forth below, the Motion is DENIED.

---

[1] Torres' Motion does not refer to Vasquez's claim, or to Vlad and NE Express, and the Court makes no finding as to them. (See ECF No. 59-9 at 3 ("Mr. Torres is entitled to summary judgment on the issue of

1

**II. BACKGROUND**

As an initial matter, the Court notes that the parties have not complied with Rule 56.1 of the Local Civil Rules of the United States District Courts for the Southern and Eastern Districts of New York ("Local Rule 56.1"), which requires that a party moving for summary judgment submit "a separate, short and concise statement" of the allegedly undisputed material facts, set out in numbered paragraphs, on which the moving party relies in arguing that there is no genuine issue to be tried. See Local Rule 56.1(a). The purpose of this rule "is to streamline the consideration of summary judgment motions by freeing district courts from the need to hunt through voluminous records without guidance from the parties." Holtz v. Rockefeller & Co., 258 F.3d 62, 74 (2d Cir. 2001). "Although the failure to file a Rule 56.1 Statement is, on its own, grounds for dismissal of a motion for summary judgment . . . district courts have 'broad discretion to determine whether to overlook a party's failure to comply with local court rules[.]'" Osuna v. Gov't Emp. Ins. Co., No. 11 Civ. 3631 (JFB) (AKT), 2014 WL 1515563, at *2 (E.D.N.Y. Apr. 17, 2014) (quoting Holtz, 258 F.3d at 73); see Antwi v. Health & Hum. Sys. (Ctrs.) F.E.G.S., No. 13 Civ. 835 (ER) (FM), 2014 WL 4548619, at *4–5 (S.D.N.Y. Sept. 15, 2014) (denying motion for failure to comply with Rule 56.1). "Where parties fail to file Rule 56.1 statements of fact, the court may choose to accept the factual allegations of the opposing parties as true for purposes of deciding the motion for summary judgment, or may alternately 'opt to conduct an assiduous review of the record.'" United States v. Kadoch, No. 96 Civ. 4720 (CBA), 2012 WL 716899, at *2 (E.D.N.Y. Feb. 17, 2012) (quoting Holtz, 258 F.3d at 73)); see Salus v. Sivan, 534 F. Supp. 2d 430, 431

---

liability as it is undisputed that his tractor trailer was at a complete stop when it was struck in rear [sic] by the tractor trailer driven by defendant [] Mamadou, an employee of defendant Sargent [].")).

(S.D.N.Y. 2008) (granting summary judgment to plaintiff notwithstanding her failure to submit Rule 56.1 statement "because there [was] simply no issue [] to try").

Here, the record is not voluminous and is easily reviewable,[2] such that the Court has been able to conduct a diligent review of the record notwithstanding the absence of Rule 56.1 statements. While the Court is willing to overlook this particular instance of failure to comply with Rule 56.1, parties are reminded of the importance of compliance with Rule 56.1 and should not expect future lapses to be excused.

A. **Factual Background**

On April 27, 2017, Torres, a citizen of New Jersey (ECF No. 17 ¶ 1), was employed by non-party "United Road Service as a truck driver operating auto transport carriers and delivering vehicles to different locations." (ECF No. 59-3 ¶ 2). At 6:30 a.m., he picked up from a terminal in Newark his truck, a Peterbilt 18-wheel tractor trailer, containing a load for transport to Rhode Island. (Id. ¶ 3; ECF No. 59-2 at 26). He left the Newark terminal at 10:30 a.m. and drove northbound on Interstate 95. (ECF No. 59-3 ¶¶ 4–5). When Torres reached the George Washington Bridge at around 11:30 a.m., he "encountered heavy traffic once on the bridge." (Id. ¶ 5; ECF No. 59-2 at 27). Torres stated that he "did not change lanes at any time while on the George Washington Bridge." (ECF No. 59-3 ¶ 5). "[A]fter the [George] Washington Bridge, . . . under the apartments" near the ramp for Interstate 87, Torres came to a "stop in traffic" in the left lane. (ECF Nos. 59-2 at 27; 59-3 ¶¶ 5–7). Again, he asserts that he "did not change lanes at any time." (ECF No. 59-3 ¶ 6). When he saw the traffic, Torres stopped, with his foot on the brake

---

[2] The record includes the transcripts of the depositions of Torres and Mamadou, a declaration from Torres, an email from Mamadou describing the accident, and photos of the vehicles involved in the accident. (ECF Nos. 59-2 – 59-6).

3

and his hands on the steering wheel.  (ECF No. 59-2 at 30).  While Torres was stopped for about five seconds, Mamadou's vehicle, also a tractor trailer, hit the rear of Torres' truck.  (Id. at 27; ECF No. 59-3 ¶ 7).  On impact, Torres' "hands came off the steering wheel and [his] foot off the . . . brake."  (ECF No. 59-2 at 30).  The force of the impact pushed Torres' truck about 15 feet forward into the rear of the tractor trailer in front of him.  (Id. at 27–28; 59-3 ¶ 8).  Before Mamadou's truck rear-ended his, Torres did not hear screeching tires, crashing metal, or breaking glass.  (ECF No. 59-2 at 28, 31).

After the impact, the driver of the truck in front of Torres asked him what happened, to which Torres responded, "I'm sorry, but it wasn't me."  (ECF No. 59-2 at 28).  That driver told Torres, "good luck, I'm outta here."  (Id.)  In his Declaration, Torres stated that, after the accident, Mamadou "came out of his vehicle and said that he was sorry and asked if [he] was okay."  (ECF No. 59-3 ¶ 10).  During his deposition, however, Torres testified that Mamadou said he was a "first year driv[er] and stuff like that[,]" but did not state that he apologized.  (ECF No. 59-2 at 37).  Despite waiting for five hours, the police did not arrive at the accident site.  (ECF Nos. 59-3 ¶ 11; 59-4 at 8).  Mamadou's vehicle was inoperable and had to be towed from the accident site, but Torres was able to drive his truck.  (ECF Nos. 59-3 ¶ 11; 59-4 at 8).  Torres did not recall experiencing any pain right after the accident.  (ECF No. 59-2 at 37).  He began to feel pain in his neck and back the day after the accident, and sought medical treatment about five days later. (Id. at 37–38).  He underwent physical therapy and received three injections for the pain in his neck and back.  (Id. at 39, 42, 43).

On the date of the accident, Mamadou, a citizen of South Carolina, was driving a Volvo 18-wheel tractor trailer as part of his employment with Sargent.  (ECF No. 59-4 at 3, 5–6).  That

4

morning, he picked up his load in Clifton, New Jersey, and traveled north on Interstate 95 destined for Bozrah, Connecticut. (Id. at 5–6). He was traveling in the left lane of the George Washington Bridge, when he first saw Torres' truck traveling in the middle lane. (Id. at 6). While on the Bridge, Torres' truck moved into the left lane in front of Mamadou. (Id. at 7). Mamadou testified at his deposition that, when they reached the point under the apartments, "[t]here was a traffic jam," and Torres' truck "stopped suddenly" about 30 feet in front of him. (Id. at 6–7). Mamadou was traveling 25 to 30 miles per hour at the time, and although he braked "[v]ery hard," the front of his truck hit the rear of Torres' truck. (Id. at 7). Mamadou testified at his deposition that his "brakes were working . . . but [he] just didn't have time to brake." (Id. at 10). After the accident, Mamadou called Sargent "straight away." (Id. at 9). A few days after the accident, Mamadou wrote the following statement in an email to Sargent's Safety officer:

> Thursday 4-27th 2017.
> I was driving from New Jersey to Bozrah, CT 06334. I was on I 95 N bound on George Washington Bridge  little-bit before exit 1D/C in B[r]onx, NY. I was following a tractor trailer. The driver in front of me Stop[ped] quickly Infront [of] me. I applied both tractor and trailer brakes to avoid h[it]ting him. My brakes did not work. I h[i]t the back of his trailer. No one was injured. I called my company to notify them. My boss told me [to] secure the area and call 911 for help. They send towing to clear the traffic and we exchange[d] our insurance th[e]n we left the area.
> That is what I remember about the accident.
> Let me know if you have any f[u]rther questions.
>
> Thank[] you
> Thierno Balde

(ECF No. 59-5).

B. **Procedural Background**

Plaintiffs filed a summons and complaint in the Supreme Court for the State of New York, New York County, which Defendants then removed to this Court on July 25, 2019 based on

diversity jurisdiction. (ECF No. 1 at 1, 8). On August 29, 2019, Plaintiffs filed their Amended Complaint, which also names as Defendants "John Does 1-10," in reference to the owners or managers of Sargent, Vlad, and NE Express. (ECF No. 17 ¶¶ 6, 14, 22). The caption also includes "ABC Corps. 1-10," but the Complaint contains no allegations to shed light on who these purported entities might be. (Id.) Vlad and NE Express have not appeared in this action. Plaintiffs, Mamadou, and Sargent consented to Magistrate Judge jurisdiction for all purposes. (ECF Nos. 29, 30).

On January 7, 2021, Plaintiffs filed the Motion. (ECF No. 59). On January 22, 2021, Mamadou and Sargent filed their Opposition. (ECF No. 62).

### III. DISCUSSION

#### A. Legal Standards

##### 1. Summary judgment

Summary judgment must be granted when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). There is no genuine issue of material fact when "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party[.]" Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). The Court must "construe the evidence in the light most favorable to the non-moving party and to draw all reasonable inferences in its favor." Trammell v. Keane, 338 F.3d 155, 161 (2d Cir. 2003). "The party seeking summary judgment bears the burden of demonstrating the absence of any genuine factual dispute." Astorga v. Allstate Oil Recovery, Co., No. 16 Civ. 5068 (SN), 2018 WL 1441377, at *1 (S.D.N.Y. Mar. 22, 2018) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 322–23 (1986)).

If the non-moving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial[,]" summary judgment will be granted. Celotex, 477 U.S. at 322–23. To defeat summary judgment, the non-moving party must do more than demonstrate "some metaphysical doubt as to the material facts," Matsushita, 475 U.S. at 586, and may not rely on "conclusory allegations." Twin Labs., Inc. v. Weider Health & Fitness, 900 F.2d 566, 568 (2d Cir. 1990). Similarly, "[t]he fact that opposing parties assert competing versions of the same event is not in itself sufficient to preclude summary judgment." Krynski v. Chase, 707 F. Supp. 2d 318, 322 (E.D.N.Y. 2009). Rather, "[c]ontradictory testimony establishes a 'genuine' issue for trial only where the conflicting testimony, if credited, would lead to a different legal outcome." Id.

2. **Negligence**

This action arises under the Court's diversity jurisdiction, (ECF No. 17 ¶¶ 1–7), and therefore, "state substantive law controls." Astorga, 2018 WL 1441377, at *1 (citing DeWeerth v. Baldinger, 38 F.3d 1266, 1272 (2d Cir. 1994)). The accident occurred in New York, and therefore, New York law applies. Id.

"Under New York law, a plaintiff seeking to prove negligence 'must demonstrate the existence of a duty, the breach of which may be considered the proximate cause of the damages suffered by the injured party.'" Astorga, 2018 WL 1441377, at *2 (quoting Becker v. Schwartz, 46 N.Y.2d 401, 410 (1978)). "Under New York law, a rear-end collision establishes a prima facie case of liability against the rear vehicle and imposes a duty of explanation on the operator of that vehicle." Krynski, 707 F. Supp. 2d at 322 (collecting cases). That duty exists because "when the driver of an automobile approaches another automobile from the rear, he or she is bound to

maintain a reasonably safe rate of speed and control over his or her vehicle, and to exercise reasonable care to avoid colliding with the other vehicle." Chepel v. Meyers, 306 A.D.2d 235, 236 (2d Dep't 2003). New York Vehicle and Traffic Law § 1129 provides that "[t]he driver of a motor vehicle shall not follow another vehicle more closely than is reasonable and prudent, having due regard for the speed of such vehicles and the traffic upon and the condition of the highway." N.Y. Veh. & Tr. L. § 1129(a).

"'A defendant can overcome the presumption of negligence by providing a non-negligent explanation for the collision.'" Polonia v. Dunphy, No. 11 Civ. 1563 (CM), 2012 WL 2376467, at *4 (S.D.N.Y. June 21, 2012) (quoting Krynski, 707 F. Supp. 2d at 323). "'If the operator cannot come forward with any evidence to rebut the inference of negligence, the plaintiff may properly be awarded judgment as a matter of law.'" Krynski, 707 F. Supp. 2d at 323 (quoting Barile v. Lazzarini, 222 A.D.2d 635, 636 (2d Dep't 1995)). Non-negligent explanations include "'mechanical failure, unavoidable skidding on wet pavement, a sudden stop of the vehicle ahead, or any other reasonable cause.'" Id. (quoting Altman v. Bayliss, No. 95-CV-0734E, 1999 WL 782338, at *2 (W.D.N.Y. Sept. 30, 1999)). Courts have held that "generally a sudden stop may rebut the presumption of negligence only when it is unexpected." Astorga, 2018 WL 1441377, at *2 (comparing Niemiec v. Jones, 237 A.D.2d 267, 268 (2d Dep't 1997) ("Where a defendant contends that the vehicle in front of him came to an unexplained sudden stop, questions of fact are raised that should be submitted to the jury.") and Forget v. Smith, 39 A.D.3d 1127 (3d Dep't 2007) (finding that presumption was rebutted because sudden stop for deer in road was unexpected) with Hong v. Maher, No. 02 Civ. 7825 (RWS), 2004 WL 771127, at *3 (S.D.N.Y. Apr. 13, 2004) (finding that presumption was not rebutted because stopped cars in lane made stop

foreseeable); Krynski, 707 F. Supp. 2d at 323 (finding that presumption was not rebutted because sudden stops are foreseeable in heavy traffic); and Robayo v. Aghaabdul, 109 A.D.3d 892, 893 (2d Dep't 2013) (finding that presumption was not rebutted where sudden stop came after switching lane in heavy traffic)). "Conclusory allegations of a sudden and unexpected stop are insufficient to rebut the inference of negligence created by the unexplained rear-end collision." Moskovitz v. Dean, No. 99 Civ. 6085 (TPG), 2001 WL 1442674, at *1 (S.D.N.Y. Nov. 15, 2001); see Norman v. Scott, No. 99 Civ. 3067 (MBM) (JCF), 2000 WL 37995, at *2 (S.D.N.Y. Jan. 14, 2000) ("[T]he mere fact that the lead vehicle stopped short is not sufficient to relieve the operator of the following vehicle from liability.").

Where the owner of a vehicle gave permission to the operator to drive the vehicle, "the owner is vicariously liable for injuries resulting from the negligent use of that vehicle." McDuffie v. Wilner, 415 F. Supp. 2d 412, 419 (S.D.N.Y. 2006) (citing N.Y. Veh. & Tr. L. § 388(1)). "An employer is also vicariously liable under the doctrine of respondeat superior for injuries resulting from the negligence of employees acting within the scope of their employment." Id.; see Krynski, 707 F. Supp. 2d at 328–29 (noting that defendant who both owned the vehicle and employed driver was liable for driver's negligence under N.Y. Veh. & Tr. L. § 388 and respondeat superior).

B. Application

1. Mamadou's liability

The Court finds that Torres has made out a prima facie case of Mamadou's negligence based on the fact that Mamadou's truck struck his truck from the rear. See Krynski, 707 F. Supp. 2d at 322. The question becomes, then, whether Mamadou has rebutted that presumption. See Polonia, 2012 WL 2376467, at *4 ("A defendant can overcome the presumption of negligence by

providing a non-negligent explanation for the collision."). The Court finds that questions of material fact exist as to whether Mamadou's negligence was the sole cause of the accident, and, therefore, summary judgment on the question of Mamadou's liability for negligence is inappropriate. See DeCosmo v. Hulse, 204 A.D.2d 953, 955 (3d Dep't 1994) (affirming denial of summary judgment where defendant "established a triable issue that the rear-end collision was not solely a result of his negligence").

As noted above, a sudden stop may rebut the presumption of negligence if the stop was unexpected. See Astorga, 2018 WL 1441377, at *2. Some courts have held that drivers should anticipate sudden stops in heavy traffic. See id. at *3; Leal v. Wolff, 224 A.D.2d 392, 394 (2d Dep't 1996). In this case, however, there is a dispute about whether Torres changed lanes before he suddenly stopped in front of Mamadou (see supra, § II.A), in which case Mamadou might not have been expected to anticipate the stop. See Marrero v. Air Brook Limousine, No. 13 Civ. 2791 (CM), 2014 WL 1623706, at *4–5 (S.D.N.Y. Apr. 23, 2014) (granting summary judgment for defendants where plaintiff's vehicle made sudden lane change before rear-end collision); Ortiz v. Rosner, 817 F. Supp. 348, 352 (S.D.N.Y. 1993); Rodriguez v. Titus Leasing Co., 34 Misc. 3d 1221A, at *3 (N.Y. Sup. Ct. Queens Cnty. Feb. 7, 2012) (same); Rosa v. Colonial Transit, Inc., 276 A.D.2d 781, 781 (2d Dep't 2000) (affirming denial of summary judgment where "a triable issue of fact exists as to whether the driver of the stopped bus . . . contributed to the accident by making a sudden stop"). In addition, it is a factual question for a jury whether Mamadou's maintenance of 30 feet in front of him while traveling at 25 to 30 miles per hour (ECF No. 59-4 at 6–7) was reasonable. See Munoz v. 640, LLC, No. 19 Civ. 5751 (BMC), 2021 WL 1176168, at *2 (E.D.N.Y. Mar. 29, 2021) (denying summary judgment where parties' diverging stories of their speed and

distance demonstrated disputed material facts and a reasonable jury could find that defendant "maintained a safe distance behind plaintiffs' vehicle and did not expect a sudden stop . . ."); Rosner, 817 F. Supp. at 352–53 (denying summary judgment where jury could find that plaintiff's sudden stop "could have been unforeseeable and could have occurred without warning to the defendant"); Martin v. Pullafico, 272 A.D.2d 305, 305 (2d Dep't 2000) (affirming denial of summary judgment where there were "triable issues of fact as to whether the individual defendant failed to maintain a safe distance and whether the plaintiffs' vehicle stopped suddenly, thereby contributing to the accident"). Torres offers no support for his assertion that Mamadou "left insufficient space between his vehicle and [Torres'] [vehicle]" to stop once Mamadou saw that Torres was stopped in front of him. (ECF No. 64 at 6). Rather, a jury could find that, under the circumstances, Mamadou had not "failed to use reasonable care to avoid the collision." Marrero, 2014 WL 1623706, at *4. Accordingly, the Court finds that Mamadou, through his deposition testimony, has provided a non-negligent explanation for his rear-end accident with Torres' vehicle, and material disputes of fact must be resolved by a jury.

   2. **Sargent Logistics' liability**

It is undisputed that Mamadou was employed by Sargent at the time of the accident. (ECF Nos. 8 ¶ 7; 59-4 at 5). Because Torres has failed to show the absence of a genuine issue of material fact as to Mamadou's negligence, however, he has also failed to establish Sargent's liability as a matter of law. See Munoz, 2021 WL 1176168, at *2 (denying plaintiffs' motion for summary judgment as to both individual defendant and employer in light of disputed material facts as to parties' respective negligence); Rosner, 817 F. Supp. at 353 (denying plaintiffs' motion for summary judgment as to both individual defendant and his employer where genuine issues

of material fact existed as to cause of accident); Rodriguez, 34 Misc. 3d 1221A, at *3 (denying plaintiff's motion for summary judgment as to both individual defendant and his employer where triable issues of fact existed as to plaintiff's role in the accident).

### 3. Other Defendants' liability

The docket does not reflect that Plaintiffs have effected service on Vlad or NE Express, nor has either of these Defendants appeared in this action. In addition, in the Motion, Plaintiffs do not present any grounds on which to hold Vlad or NE Express liable. Accordingly, the Court makes no finding as to the liability of Vlad or NE Express.

### IV. CONCLUSION

For the reasons set forth above, Torres' Motion is DENIED.

In accordance with the Court's Individual Practices in Civil Cases (the "Court's Practices"), by **Thursday, September 16, 2021**, the parties shall **jointly** file:

(i)      A Joint Pretrial Order ("JPTO");

(ii)     Proposed Jury Instructions;

(iii)    Proposed voir dire questions;

(iv)    A proposed special verdict firm.

By **Thursday, September 16, 2021** the parties shall file any motions in limine.

The parties must comply with the Court's Practices concerning the format and content of these submissions.

A final pretrial conference is scheduled for **Wednesday, October 13, 2021 at 2:00 pm in-person, in Courtroom 18A, 500 Pearl Street, New York, New York**. Trial counsel shall attend the final pretrial conference.

Dated:   New York, New York
         August 19, 2021

                                            SO ORDERED.

                                            _____
                                            SARAH L. CAVE
                                            United States Magistrate Judge