UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

BENJAMIN TORRES and CARMEN Y. VASQUEZ,

                Plaintiffs,

-v-

BALDE THIERNO MAMADOU, SARGENT LOGISTICS, INC., and JOHN DOES 1–10 (said names being fictitious and unknown) and/or ABC CORPS. 1–10 (said names being fictitious and unknown),

                Defendants.

CIVIL ACTION NO.: 19 Civ. 6973 (SLC)

**OPINION AND ORDER**

**SARAH L. CAVE**, United States Magistrate Judge.

## I. INTRODUCTION

Plaintiffs Benjamin Torres ("Torres") and his wife, Carmen Y. Vasquez ("Vasquez," together, "Plaintiffs"), filed this personal injury action arising out of an April 27, 2017 motor vehicle accident on the George Washington Bridge, naming as Defendants Balde Thierno Mamadou ("Mamadou"), the driver of the vehicle that hit the car carrier Torres was driving (the "Car Carrier"), and his employer, Sargent Logistics, Inc. ("Sargent," with Mamadou, "Defendants")). (ECF No. 17).[1]

The Court has scheduled this case for a jury trial as to Plaintiffs' claims against Defendants on December 13, 2022. (ECF No. 112). Before the Court is Plaintiffs' motion in limine opposing

---

[1] Plaintiffs also named as Defendants Vlad Transportation Services, Inc. and New England Express, Inc., but did not effect service on them and voluntarily dismissed these claims. See Torres v. Mamadou, No. 19 Civ. 6973 (SLC), 2021 WL 3682906, at *6 (S.D.N.Y. Aug. 19, 2021). (See ECF Nos. 116; 120).

1

two of Defendants' proposed jury instructions. (ECF No. 105 (the "Motion")). For the reasons set forth below, the Motion is DENIED.

## II. BACKGROUND

The factual background of this case is set forth in the Court's Opinion and Order dated August 19, 2021 denying Defendants' motion for summary judgment, and is incorporated by reference. Torres, 2021 WL 3682906, at *2–3. This case was initially scheduled for trial on March 17, 2022, but at the parties' request, the Court twice adjourned the trial, which will now begin on December 13, 2022. (ECF Nos. 82; 94; 100; 112).

In anticipation of the initial March 17, 2022 trial date, and pursuant to the Court's order, on October 20, 2021, the parties filed a joint pre-trial order, which included a list of trial exhibits (the "First JPTO"), proposed voir dire questions, joint request to charge listing by title proposed instructions (i.e., without the text of the instructions) (the "Request to Charge"), and verdict sheet. (ECF Nos. 68; 70; 71; 72; 73; 75).[2] In the Request to Charge, Defendants listed New York Pattern Jury Instructions (the "PJI") 2:88E ("Permanent Consequential Limitation of Use of a Body Organ or Member") and 2:88F ("Significant Limitation of Use of Body Function or System"). (ECF No. 72 at 3).

In response to the Court's order, the parties refiled the Request to Charge with the text of the instructions. (ECF Nos. 81; 92 (the "Proposed Instructions")). In the Proposed Instructions, Defendants included the text of PJI 2:88E and 2:88F, modified for this case, as follows:

> 38. You must answer the following question: Did plaintiff sustain a permanent consequential limitation of use of a body organ or member as a result of the accident on April 27, 2017[.]

---

[2] Due to a filing deficiency, the parties refiled the verdict sheet on October 21, 2021. (ECF Nos. 73; 75).

2

> A limitation of use of a body organ or member means that the body organ or member does not operate at all or operates only in some limited way. It is not necessary for you to find that there has been a total loss of the use of the body organ or member. The limitation of use must be consequential, which means that it is significant, important or of consequence. A minor, mild or slight limitation of use is not significant, important or of consequence.
>
> If you find that Plaintiff sustained a permanent limitation of use as a result of the accident on April 27, 2017 and that the limitation is consequential as I have defined it, you must answer the question "yes." If you find that Plaintiff did not sustain a permanent limitation of use as a result of the accident on April 27, 2017, or that the limitation is not consequential, you must answer the question "no."
>
> 39. You must answer the following question: Did plaintiff sustain a significant limitation of use of a body function or system as a result of the accident on April 27, 2017?
>
> A limitation of use of a body function or system means that the function or system does not operate at all or operates only in some limited way. It is not necessary for you to find that there has been a total loss of the body function or system or that the limitation of use is permanent. However, the limitation of use must be significant, meaning that the loss is important or meaningful. A minor, mild or slight limitation of use is not significant.
>
> If you find that Plaintiff sustained a limitation of use as a result of the accident on April 27, 2017 and that the limitation is significant, you must answer the question "yes." If you find that [Plaintiff] did not sustain a limitation of use as a result of the accident on April 27, 2017, or that the limitation is not significant, you must answer the question "no."

(ECF No. 92 at 18–19 (citing PJI 2:88E, 2:88F) (the "Disputed Instructions")).

On November 30, 2021, Plaintiffs submitted the declaration of their attorney, Rachel Nass, Esq. (ECF Nos. 80 (the "Nass Declaration")), and a memorandum of law opposing the Disputed Instructions because, they argue, Torres is not a "covered person" as defined by New York Insurance Law § 5102(j) and, therefore, the "serious injury threshold" in New York Insurance Law §§ 5102(d) and 5104 is inapplicable. (ECF No. 80-4 at 3 ("Plaintiffs' MOL")). As support for this conclusion, Nass represents that, "[o]n April 27, 2017, [] Torres was employed by United

3

Road Service, (URS Midwest, Inc.), a Michigan Corporation[,] as a truck driver" and that the Car Carrier "that [] Torres was driving was registered in the State of Michigan . . . to URS Midwest, Inc. [and] insured by Romulus Risk Retention Group ["Romulus"]." (ECF No. 80 ¶ 3). Attached to the Nass Declaration are three exhibits: (i) a document from the Federal Motor Carrier Safety Administration ("FMCSA") website showing the insurance history for URS Midwest, Inc. (the "FMCSA Document"); (ii) a document reflecting a search of the New York State Department of Financial Services' website for Romulus (the "NYSDFS Document"); and (iii) an email from the New York State Department of Motor Vehicles dated November 23, 2021 stating that it did "not have a Resolution and Power of Attorney on file for Romulus" (the "NYSDMV Email"). (ECF Nos. 80-1 – 80-3 (together, the "Additional Documents")). The Nass Declaration, however, attaches neither the Michigan registration nor the Romulus insurance policy that covered the Car Carrier (the "Michigan Policy").

On December 15, 2021, Defendants submitted a memorandum of law (ECF No. 85 (the "Opposition")), and a declaration from their attorney, Howard J. Snyder, Esq. ("Snyder"), who attests that, although Defendants "raised the no-fault threshold in their Answer[,]" Plaintiffs did not produce the Additional Documents as "part of their Rule 26 disclosure or other pre trial disclosure." (ECF No. 86 ¶¶ 4–5 (the "Snyder Declaration"); see ECF No. 8 at 5 ("The plaintiff did not suffer any serious injury as defined by Section 5102 of the Insurance Law of the State of New York nor has the plaintiff sustained any economic loss as defined in Sections 5102 and 5104 of the Insurance Law of the State of New York.")).

On February 14, 2022, the Court granted the parties' request to adjourn the March 17, 2022 trial date, and subsequently re-scheduled trial to begin on October 11, 2022. (ECF Nos. 94;

96; 100). The parties thereafter filed a revised JPTO (ECF No. 102 (the "Revised JPTO"),[3] and Plaintiffs refiled Plaintiffs' MOL as the Motion, along with the Nass Declaration attaching the Additional Documents (but still not attaching the Michigan Policy). (ECF No. 105).[4] Defendants refiled their Opposition and the Snyder Declaration, which are substantively unchanged. (ECF Nos. 114; 115).[5] Plaintiff filed a further reply in support of the Motion. (ECF No. 113).

On September 23, 2022, the Court granted the parties' second request to adjourn the trial date, and rescheduled the trial for December 13, 2022. (ECF No. 112). A settlement conference before the Honorable Jennifer E. Willis will occur on November 22, 2022. (ECF min entry Oct. 13, 2022).

### III. DISCUSSION

#### A. The Additional Documents

In support of the Motion, Plaintiffs rely on the Additional Documents, which Defendants argue Plaintiffs were obligated but failed to disclose during discovery pursuant to Federal Rule of Civil Procedure 26. (ECF Nos. 105-1 – 105-3; 109 at 9–10). Plaintiffs do not dispute that they failed to disclose the Additional Documents during discovery; indeed, they do not even substantively respond to Defendants' argument. (ECF No. 113 at 4 ("Plaintiff [sic] deems the remaining argument raised by [D]efendant[s] as unworthy of reply.")). The Court thus addresses

---

[3] The Revised JPTO: (i) adds dates on which Torres received steroid injections; (ii) notes that Torres has been recommended to undergo spinal surgery; (iii) increases the amount of an ERISA lien; and (iv) lists additional medical records as exhibits. (Compare ECF No. 102 at 3, 6, 8 with ECF No. 70 at 3, 6, 8).
[4] Plaintiffs initially filed the Additional Documents as attachments to the Motion, but at the direction of the Clerk of the Court, properly refiled them as exhibits to the Nass Declaration. (See ECF Nos. 105; 110; ECF min. entry Sept. 16, 2022).
[5] Defendants' initial attempt to refile the Opposition and Snyder Declaration was rejected due to filing errors. (ECF Nos. 108; 109).

the threshold question of whether it may consider the Additional Documents in deciding the Motion.

1. **Legal Standard**

Federal Rule of Civil Procedure 26(a)(1)(A) requires a party, "without awaiting a discovery request," to provide to the other parties:

> . . .
>
> (ii) a copy—or a description by category and location—of all documents, electronically stored information, and tangible things that the disclosing party has in its possession, custody, or control and may use to support its claims or defenses, unless the use would be solely for impeachment;
>
> . . .
>
> (iv) for inspection and copying . . . any insurance agreement under which an insurance business may be liable to satisfy all or part of a possible judgment in the action or to indemnify or reimburse for payments made to satisfy the judgment.

Fed. R. Civ. P. 26(a)(A)(ii), (iv). In addition, Rule 26(a)(3) requires parties to disclose "and promptly file [certain] information about the evidence that it may present at trial other than solely for impeachment[,]" including "an identification of each document or other exhibit[.]" Fed. R. Civ. P. 26(a)(3)(A)(iii).

A party who fails to comply with its Rule 26(a) obligations "is not allowed to use that information . . . to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). "The range of sanctions a court may impose on a party who fails to comply with its Rule 26(a) obligations 'includes—but is not limited to—orders deeming certain facts established; permitting an adverse inference instruction; striking pleadings; [or] prohibiting the disobedient party from making specific claims or introducing certain matters into evidence . . . .'" Local 3621, EMS Officers Union, DC-37,

AFSCME, AFL-CIO v. City of New York, No. 18 Civ. 4476 (LJL) (SLC), 2021 WL 5362256, at *13 (S.D.N.Y. June 2, 2021) (quoting Doug's World Clocks.com Pty Ltd. v. Princess Int'l Inc., 323 F.R.D. 167, 172 (S.D.N.Y. 2017) (internal citations omitted)), adopted by 2021 WL 4706162 (S.D.N.Y. Oct. 7, 2021).  "Pursuant to Rule 37(c)(1), preclusion of evidence" that a party failed to disclose under Rule 26(a)(1)(A) "or another listed sanction is automatic unless the non-disclosure was substantially justified or harmless."  Vaccaro v. Waterfront Homes Marina, No. 10 Civ. 4288 (NRB), 2011 WL 5980997, at *5 (S.D.N.Y. Nov. 30, 2011) (citing Design Strategy. Inc. v. Davis, 469 F.3d 284, 297–98 (2d Cir. 2006)).

"A failure to disclose is substantially justified when 'there is justification to a degree that could satisfy a reasonable person that parties could differ as to whether the party was required to comply with the disclosure request, or if there exists a genuine dispute concerning compliance.'"  Wu v. Metro-North Commuter R.R. Co., No. 14 Civ. 7015 (LTS) (FM), 2016 WL 5793971, at *9 (quoting AIG Glob. Asset Mgmt. Hldgs. Corp. v. Branch, No. 04 Civ. 8803 (RMB) (THK), 2005 WL 425494, at *1 (S.D.N.Y. Feb. 18, 2005)).  Under Rule 37(c)(1), harmlessness requires an "absence of prejudice" to the receiving party.  Ritchie Risk-Linked Strategies Trading (Ireland), Ltd. v. Coventry First LLC, 280 F.R.D. 147, 159 (S.D.N.Y. 2012).

"A district court has broad discretion to impose sanctions under Rule 37."  McDermott v. Liberty Maritime Corp., No. 08 Civ. 1503 (KAM) (ALC), 2011 WL 13300062, at *2 (E.D.N.Y. May 13, 2011).  "The fundamental purpose of Rule 37(c) is to prevent the practice of 'sandbagging' an adversary with new evidence."  Feltenstein v. City of New Rochelle, No. 14 Civ. 5434 (NSR), 2018 WL 3752874, at *6 (S.D.N.Y. Aug. 8, 2018).  Nevertheless, "[p]recluding evidence is a severe sanction."  McDermott, 2011 WL 13300062, at *2; see Feltenstein, 2018 WL 3752874, at *6

7

(explaining that preclusion of evidence under Rule 37(c)(1) "remains a drastic remedy and should be exercised with discretion and caution") (internal citations omitted). Before exercising discretion to impose sanctions under Rule 37(c)(1), courts must consider: "(1) the disobedient party's explanation for its failure to comply with the disclosure requirement; (2) the importance of the late-disclosed evidence; (3) the prejudice suffered by the opposing party; and (4) the possibility of a continuance to mitigate any such prejudice." Local 3621, 2021 WL 5362256, at *13 (citing Patterson v. Balsamico, 440 F.3d 104, 117 (2d Cir. 2006)).

### 2. Application

The Court finds that each of the four factors under Rule 37(c)(1) weigh in favor of precluding Plaintiffs from relying on the Additional Documents to support their Motion.[6] First, Plaintiffs offer no explanation for failing to disclose the Additional Documents during discovery pursuant to Rule 26, much less establish that their failure was substantially justified or harmless. (See ECF No. 113). Although Defendants asserted the no-fault threshold as an affirmative defense in their Answer, which was filed on August 8, 2019, Plaintiffs' counsel inexplicably waited until the eve of the March 17, 2022 trial date to visit the public websites from which the Additional Documents derive. (ECF No. 8 at 5; see § III.B, infra; ECF Nos. 105-1 at 2 (FMCSA Document reflecting search results for URS Midwest, Inc. as of November 12, 2021); 105-2 (NYSDFS Document image showing website search on Nov. 4, 2021); 105-3 (NYSDMV email, which Plaintiffs' counsel sent on Nov. 17, 2021)). Second, as discussed further below, the

---

[6] Because Plaintiffs have not included the Additional Documents in their list of trial exhibits in the JPTO and the Revised JPTO, (ECF Nos. 70; 102), they also may not be introduced as exhibits at trial. See Fed. R. Civ. P. 37(c)(1); see also Jones v. Pawar Bros., No. 17-CV-3018 (PKC) (SJB), 2022 WL 4226092, at *4 (E.D.N.Y. Sept. 13, 2022) (excluding exhibits that were not listed in joint pretrial order).

Additional Documents pertain to the nature and extent of Torres' potential recovery, i.e., whether his recovery against Defendants for his economic loss will be limited to losses that exceed $50,000, and whether he can recover for non-economic injuries (pain and suffering) at all. (See § III.B, infra). Thus, the Additional Documents pertain to an important issue for trial, as well as the upcoming settlement conference, and Plaintiffs' failure to disclose them earlier was not substantially justified. Third, because the Additional Documents implicate the potential scope of Defendants' liability for Torres' damages, Defendants would be prejudiced if Plaintiffs were permitted to rely on them. Fourth, a continuance will not cure the prejudice to Defendants. Trial has been adjourned twice in this matter, and is scheduled to proceed in less than 60 days. Finally, the Court has considered whether different sanctions, such as attorneys' fees or an adverse inference, might be appropriate, but given the significance of the Additional Documents to the issue of damages, such sanctions are not adequate to cure the prejudice to Defendants.

Accordingly, the Court finds that, because they failed to produce the Additional Documents during discovery, Plaintiffs are now precluded from relying on them to support the Motion or at trial.

### B. The Disputed Instructions

Even if the Court were to consider the Additional Documents, for the reasons set forth below, the Court finds that the Disputed Instructions are applicable and will include them in the final jury instructions.

1. **Legal Standard**[7]

New York's Comprehensive Motor Vehicle Insurance Reparations Act, N.Y. Ins. L. § 5101 et seq. (the "No-Fault Law"), "requires the insurer of any vehicle owner to pay benefits to '[p]ersons, other than occupants of another motor vehicle or a motorcycle, for loss arising out of the use or operation in this state of such motor vehicle.'" Rosa v. Allstate Ins. Co., 981 F.2d 669, 676 (2d Cir. 1992) (quoting N.Y. Ins. L. § 5103(a)(1)). The No-Fault Law "makes a broad category of affected persons[,]" including the "occupant of the insured vehicle—'covered person[s] . . . entitled to 'first party benefits' by force of law." Id. (quoting N.Y. Ins. L. §§ 5102(j), 5103(a)). The No-Fault Law "guarantees prompt and full compensation for economic losses up to $50,000 without the necessity of recourse to the courts and simultaneously eliminates recovery for non-economic losses (i.e., pain and suffering) in relatively minor cases." Patrello v. United States, 757 F. Supp. 216, 219 (S.D.N.Y. 1991) (citing Montgomery v. Daniels, 38 N.Y.2d 41, 55 (1975)).

The No-Fault Law has a "two-pronged nature." Patrello, 757 F. Supp. at 219. First, "§ 5103 requires insurers to compensate accident victims for their 'basic economic loss' on account of personal injury by promptly distributing what are termed 'first party benefits' without regard to fault." Id. "'Basic economic loss' essentially consists of medical expenses, loss of earnings and other 'reasonable and necessary' expenses up to $50,000 per person." Id. (citing N.Y. Ins. L. § 5102(a)). Under the No-Fault Law, "first party benefits" refers to reimbursement to the accident victim for the basic economic loss less certain deductions. Id. (citing N.Y. Ins. L. § 5102(b)).

---

[7] The Court incorporates its summary of the negligence standard under New York law. See Torres, 2021 WL 3682906, at *4–5.

Second, the No-Fault Law imposes two limitations on tort recovery for personal injuries in actions between "covered persons." Patrello, 757 F. Supp. at 219 (citing N.Y. Ins. L. § 5104). The first recovery limitation is that "the injured party may not duplicate recovery of first party benefits but may recover in tort only that basic economic loss which exceeds $50,000." Id. The second limitation is that recovery for "non-economic loss," i.e., pain and suffering, "is limited to that associated with 'serious injury' as defined in § 5102(d)." Id.

The New York Court of Appeals has explained the purpose of the No-Fault Law as:

> guaranteeing full and fair recovery to all victims by reducing pressure on a seriously injured person to compromise down his claims in order to obtain funds for treatment while at the same time eliminating pressure on insurers to compromise up claims by persons suffering minor injuries in order to avoid the expense of investigating and defending against such minor claims.

Montgomery, 38 N.Y.2d at 55. The "trade-off" for covered persons implicit in the No-Fault Law is that, "in exchange for their entitlement to prompt payment of first party benefits under § 5103 without regard to fault, covered persons must also accept § 5104's tort recovery limitations in actions against other covered persons." Patrello, 757 F. Supp. at 219.

The No-Fault Law applies to "any action by or on behalf of a covered person against another covered person for personal injuries arising out of negligence in the use or operation of a motor vehicle in [New York.]" N.Y. Ins. L. § 5104(a). A threshold question, then, in applying the No-Fault Law, is whether both the plaintiff and defendant are "covered persons" as defined in § 5102(j). Patrello, 757 F. Supp. at 219–20; see Felice Fedder Oriental Art, Inc. v. Scanlon, 708 F. Supp. 551, 555 (S.D.N.Y. 1989) (addressing first whether both parties were covered persons under § 5102(j) before evaluating serious injury under § 5102(d)). There are three categories of covered persons: (1) "any pedestrian injured through the use or operation of" a motor vehicle

"which has in effect the financial security required by [N.Y. Vehicle & Traffic Law § 310 et seq. or §§ 370–71][8] or which is referred to in [N.Y. Vehicle & Traffic Law § 321(2)];[9] (2) "any owner, operator or occupant of" a such a motor vehicle; or (3) "any other person entitled to first party benefits." N.Y. Ins. L. § 5102(j). As one court in this District has explained in evaluating whether both parties to an action were covered persons:

> it is evident that the definition of covered person in § 5102(j) is derived from each category of person to whom an owner of a motor vehicle is liable for the payment of first party benefits under § 5103. Indeed, the definition of covered person includes a catch-all provision to ensure that all persons entitled to first party benefits are within its scope. The converse implication of this definition is also apparent; that is, an injured person who is not entitled to first party payments cannot be a covered person under § 5102(j).

Cooper v. United States, 635 F. Supp. 1169, 1173 (S.D.N.Y. 1986).

  2. **Application**

Plaintiffs argue that because both Torres and Defendants are not "covered persons" under § 5102(j), Torres is not subject to the serious injury threshold in § 5102(d) and the Disputed Instructions are thus inapplicable. (ECF Nos. 105-4; 113). Citing the Additional Documents, Plaintiffs contend that because Romulus was neither authorized to do business in New York nor consented to service of process under N.Y. Vehicle & Traffic Law § 311(4), the "covered person" requirement in § 5102(j) has not been met. (ECF Nos. 105-4 at 4–5; 113- at 1–3). Defendants

---

[8] Financial security refers to the "ability to respond in damages for liability arising out of the ownership, maintenance or use of a motor vehicle as evidenced by an owner's policy of liability insurance, a financial security bond, a financial security deposit, or qualifications as a self-insurer . . . ." N.Y. Veh. & Tr. L. § 311(3).

[9] This provision exempts from the financial security requirement certain vehicles for hire, and is therefore inapposite to the facts of this case. See N.Y. Veh. & Tr. L. §§ 321(1) (referring to motor vehicles required to provide security under § 370), 370(1) (referring to "[e]very person, firm, association or corporation engaged in the business of carrying or transporting passengers for hire in any motor vehicle or motorcycle" other than those operated by a municipality).

respond that Torres is a covered person because, like New York, "Michigan requires personal injury protection/no-fault coverage[,]" and Torres has not shown that he was not entitled to no-fault coverage under the Michigan Policy. (ECF No. 109 at 5–6).

First, the Court finds that, because Torres was a "person entitled to first party benefits," he is a "covered person" under § 5102(j). Cooper, 635 F. Supp. at 1173. Accepting as true the statement in the Nass Declaration that the Car Carrier Torres was driving on the date of the accident was registered in Michigan and covered by the Michigan Policy (ECF No. 110 ¶ 3), the Court observes that Michigan, like New York, is a no-fault state, and the Michigan Policy, by law, provided no-fault coverage. See Scott v. Ace Prop. & Cas. Ins. Co., No. 21-11075, 2022 WL 2119533, at *2 (E.D. Mich. June 13, 2022) (quoting Mich. Comp. L. Ann. § 500.3101 et seq. (the "Michigan No-Fault Law")). The Michigan No-Fault Law requires "the owner or registrant of a motor vehicle required to be registered in this state [to] maintain security for payment of benefits under personal protection insurance and property protection insurance . . . , and residual liability insurance." Mich. Comp. L. Ann. § 500.3101(1). "Personal protection insurance" refers to the obligation of an insurer "to pay benefits for accidental bodily injury arising out of the ownership, operation, maintenance or use of a motor vehicle as a motor vehicle . . . without regard to fault." Mich. Comp. L. Ann. § 500.3105(1)–(2). As a result of Plaintiffs' admission in the Nass Declaration, then, the Court can conclude as a matter of law that Michigan's No-Fault Law applies to the Car Carrier, see Mich. Comp. L. Ann. § 3101(3)(i), and afforded to Torres as the operator of the Car Carrier "first party benefits" as defined in New York Insurance Law § 5102(b). See Covington v. Interstate Sys., 88 Mich. App. 492, 494 (1979) (explaining that, pursuant to § 3101(1), "only those vehicles required to be registered in [Michigan] are subject to the requirements of the no-fault

act"). Accordingly, Torres, as a person entitled to first party benefits, is a covered person under § 5102(j).

Second, the Court finds that Defendants were covered persons because, by operation of the Michigan No-Fault Law, the Michigan Policy was required to provide no-fault coverage to the occupant of the Car Carrier, i.e., Torres. Mich. Comp. L. Ann. § 500.3101(1). Because the Michigan Policy provided Defendants with the "ability to respond in damages for liability arising out of the ownership, maintenance or use of" the Car Carrier, they had "in effect the financial security required by" N.Y. Vehicle and Traffic Law § 311(3), and are therefore covered persons under the second category in § 5102(j). See N.Y. Veh. & Tr. L. § 311(3); N.Y. Ins. L. § 5102(j).

The Court therefore finds that, because this is an action between covered persons as defined in § 5102(j), to which the No-Fault Law applies pursuant to § 5104(a), Torres' recovery is subject to the serious injury limitations in § 5102(d), and the Disputed Instructions are applicable and appropriate.

### IV. CONCLUSION

For the reasons set forth above, Plaintiffs' Motion is DENIED.

Dated: New York, New York
October 18, 2022

SO ORDERED.

_____
SARAH L. CAVE
United States Magistrate Judge